64 F.2d 73 (1933)
YENKICHI ITO
v.
UNITED STATES.
SAME
v.
UNITED STATES et al.
No. 7000.
Circuit Court of Appeals, Ninth Circuit.
March 27, 1933.
*74 William H. Wylie and H. P. L. Beck, both of San Diego, Cal., for appellant.
Samuel W. McNabb, U. S. Atty., and Harry Graham Balter, Asst. U. S. Atty., both of Los Angeles, Cal., for the United States.
Before WILBUR, SAWTELLE, and MACK, Circuit Judges.
WILBUR, Circuit Judge.
Two indictments were returned against appellant. The indictment in case No. 2054-H charged appellant with the substantive offense of bringing into and attempting to bring into the United States and aiding, assisting, and abetting in bringing and attempting to bring into the United States six certain Japanese persons, naming them, which said Japanese persons were aliens not duly admitted to the United States by an Immigration Inspector and not lawfully entitled to enter and reside within the United States in violation of section 8 of the Immigration Act of 1917 (8 USCA § 144). The indictment in case No. 2061-C charged appellant and others in the first count thereof with conspiracy to unlawfully bring into or attempt to bring into the United States the same six Japanese aliens mentioned in the indictment in case No. 2054-H, and many other Japanese aliens whose names were unknown to the grand jury; and in the second count with conspiracy to unlawfully conceal and harbor these same six Japanese aliens, and many other Japanese aliens whose names were unknown to the grand jury.
Appellant plead "not guilty" to both indictments and the two were consolidated in the court below for trial pursuant to stipulation of counsel. The jury returned a verdict of guilty against appellant on both indictments and in case No. 2054-H, appellant was sentenced to imprisonment for six years and on each count in the conspiracy indictment in case No. 2061-C appellant was sentenced to imprisonment for two years, these two sentences to run concurrently with each other and with the one imposed in case No. 2054-H, and to pay a fine of $250. From these convictions and sentences, appellant brings this appeal.
At the time the vessel Angelus was seized with the six Japanese aliens named in the indictments on board, it was on the high seas some forty miles off the coast of Southern California. Nohr and Humphrey, who were indicted along with appellant in the conspiracy indictment, were in charge of the Angelus at the time of the seizure and they, together with all other persons on board, were arrested and brought into San Diego. Appellant was not on board the Angelus and took no active part in the actual transportation of the said Japanese aliens. The theory on which he is charged in the indictment in case No. 2054-H is that he attempted, not by himself but through another, to bring these aliens, or that he aided, assisted, and abetted another in attempting to bring them in.
Appellant contends that transporting aliens on the high seas is not a crime against the United States and that Nohr and Humphrey, being some forty miles from the mainland at the time they were arrested and the vessel seized, committed no crime within the territorial limits of the United States so as to give its courts jurisdiction and, therefore, appellant cannot be convicted of an attempt, *75 within the jurisdiction of the court, on the basis of their acts.
Section 8 of the Immigration Act of 1917 (8 USCA § 144) makes it a crime to attempt to bring into the United States aliens who are not lawfully entitled to enter. One question for determination in this connection is whether the attempt must be made within the territorial limits of the United States or whether section 8 is effective beyond those territorial limits. It is a general rule of criminal law that the crime must be committed within the territorial jurisdiction of the sovereignty seeking to try the offense in order to give that sovereign jurisdiction. For this purpose the territorial domain of the United States extends into the ocean a marine league, or three geographic miles, from its shores. Cunard S. S. Co. v. Mellon, 262 U. S. 100, 122, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306; Ford v. United States, 273 U. S. 593, 618, 47 S. Ct. 531, 71 L. Ed. 793. In United States v. Smiley et al., 27 Fed. Cas. page 1132, No. 16,317, Justice Field stated the rule as follows: "The criminal jurisdiction of the government of the United States  that is, its jurisdiction to try parties for offenses committed against its laws  may in some instances extend to its citizens everywhere. Thus, it may punish for violation of treaty stipulations by its citizens abroad, for offenses committed in foreign countries where, by treaty, jurisdiction is conceded for that purpose, as in some cases in China and in the Barbary States; it may provide for offences committed on deserted islands, and on an uninhabited coast, by the officers and seamen of vessels sailing under its flag. It may also punish derelictions of duty by its ministers or consuls, and other representatives abroad. But in all such cases it will be found that the law of congress indicates clearly the extraterritorial character of the act at which punishment is aimed. Except in cases like these, the criminal jurisdiction of the United States is necessarily limited to their own territory, actual or constructive. Their actual territory is co-extensive with their possessions, including a marine league from their shores into the sea."
There is no question but that Congress may, if it wishes, extend the federal criminal jurisdiction to offenses committed on the high seas, and it has done so in a number of instances. Chapters 11 and 12 of the United States Criminal Code, section 272 et seq. (18 USCA § 451 et seq.). However, as stated by Justice Field in U. S. v. Smiley, supra, the intent of Congress to extend the federal criminal jurisdiction to offenses committed on the high seas must clearly appear from the language of the statute. There is nothing in section 8 of the Immigration Act of 1917, supra, to indicate that Congress intended it to be effective outside of the recognized territorial limits of the United States. Therefore, section 8 must be construed to have no effect on the high seas outside the three-mile limit.
As the acts of Nohr and Humphrey, which constituted the basis for the substantive charge against the appellant in case No. 2054-H were committed in transporting the aliens from Punta Banda, Mexico, to a point some forty miles off the mainland, where they were intercepted by the United States Coast Guard, they did not make an attempt to bring in or land aliens not lawfully entitled to enter the United States within the jurisdiction of the United States or of the District Court thereof for the Southern District of California. The question is whether the appellant may nevertheless be guilty of an attempt through them, or as an abettor in the attempt and, if not, whether appellant committed any act within the jurisdiction of the United States sufficient to constitute an attempt within that jurisdiction. In order for one person to be held criminally responsible as an aider and abettor in the commission of an act by another, as is sought to be done here, the act committed by this other person must constitute a crime against the Government which prosecutes the charge. Manning v. Biddle (C. C. A. 8) 14 F.(2d) 518. Here no illegal act was committed by Nohr and Humphrey within the jurisdiction of the United States. The act committed was legal where committed and was potentially wrong only because coupled with an intent to consummate the act of landing the aliens within the United States. Hence, no substantive offense was committed by Nohr and Humphrey and appellant could not be properly convicted as their aider and abettor or for attempting, through them, to bring aliens into the United States not lawfully entitled to enter.
It was suggested on the argument that the appellant was guilty of an act within the United States, which was of itself an attempt, or, if not, was an act of aiding and abetting the attempt of Nohr and Humphrey. The latter contention is disposed of by what we have already said. As to the former, it should be added that the act relied upon to constitute an attempt by the appellant was his making of statements to the immigration authorities at San Diego, with reference to *76 the smuggling activities of Paulsen. The appellant relies upon these statements as proof that his smuggling activities had ceased. The government, however, contends that these statements were calculated to divert the attention of the immigration authorities from the scene of the proposed landing and that they were, therefore, designed to aid and abet the proposed landing of the aliens that Nohr and Humphrey were attempting to bring into the United States. The statements were made by the appellant to the immigration authorities three days before the boat left San Diego, and, even if otherwise sufficient, did not carry the project far enough forward to come within the domain of an attempt. See statement by Justice Cardozo speaking for the Court of Appeals of New York in People v. Werblow, 241 N. Y. 55, 148 N. E. 786. The indictment charging appellant with the substantive offense of attempting to bring in aliens not entitled to enter and reside in the United States or as an aider and abettor of such an attempt was not sustained by the evidence and appellant's motion for a directed verdict in that case should have been granted. Sloan v. United States (C. C. A.) 287 F. 91.
In regard to case No. 2061-C, the indictment in which it was charged that appellant, with Nohr and Humphrey, conspired with Paulsen and with each other to unlawfully bring or attempt to bring Japanese aliens into the United States and to unlawfully conceal and harbor said Japanese aliens, a different situation is presented. It is well settled that under section 37 of the Criminal Code (18 USCA § 88) prosecution for conspiracy may be brought in the district where the unlawful agreement was entered into or where any of the overt acts took place. Ford v. United States, 273 U. S. 593, 47 S. Ct. 531, 71 L. Ed. 793; Baker v. U. S. (C. C. A.) 285 F. 15; Grayson v. U. S. (C. C. A.) 272 F. 553; Harrington v. U. S. (C. C. A.) 267 F. 97.
In Ford v. United States, 273 U. S. 593, 619, 47 S. Ct. 531, 540, 71 L. Ed. 793, supra, Chief Justice Taft, speaking for the court, said: "The next objection of the defendants taken from the Quadra is that on all the evidence they were entitled to a directed verdict of not guilty. They argue that they are charged with a conspiracy illegally to import, or to attempt to import, liquor into the United States when they were corporeally at all times during the alleged conspiracy out of the jurisdiction of the United States, and so could commit no offense against it. What they are charged with is conspiring `at the Bay of San Francisco' with the defendants Quartararo and Belanger illegally to import liquor, and the overt acts of thus smuggling and attempting to smuggle it. The conspiracy was continuously in operation between the defendants in the United States and those on the high seas adjacent thereto, and of the four overt acts committed in pursuance thereof, three were completed and took effect within the United States and the fourth failed of its effect only by reason of the intervention of the federal officers. In other words, the conspiring was directed to violation of the United States law within the United States by men within and without it, and everything done was at the procuration and by the agency of each for the other in pursuance of the conspiracy and the intended illegal importation. In such a case all are guilty of the offense of conspiring to violate the United States law whether they are in or out of the country."
In the indictment for conspiracy, twelve overt acts were set out which were alleged to have been done at different times during the year preceding the seizure of the vessel Angelus and the arrest of the defendants. Most of these acts were substantially proved by the evidence and were done within the Southern District of California. It, therefore, follows that the District Court for the Southern District of California had jurisdiction to try appellant for conspiracy, and in denying appellant's motion for a directed verdict in this case the trial court did not commit error.
Defendants Nohr and Humphrey pleaded guilty to the conspiracy charge and Nohr was a witness on behalf of the government. His testimony, in part, was to the effect that Ito paid $400 to Kelly on the vessel Angelus after Kelly had repossessed the boat from Nohr for failure to make the payments and the boat was taken in Nohr's name; that in June of 1931 Nohr, on Ito's instructions, went down to Punta Banda, Mexico, in the Angelus and got six Japanese aliens and brought them to San Pedro, where they were taken in charge by a Japanese person whom Ito had told Nohr would be there for them and for which trip Nohr received money from Ito; that on August 29, 1931, Nohr made another trip to Punta Banda, following Ito's instructions, and picked up some more Japanese aliens, but the trip back was interrupted at Oceanside, Cal., because of motor trouble; that Nohr telephoned Ito from Oceanside and Ito came down with five gallons of *77 oil and a battery and Nohr then completed the trip to San Pedro, having been told to do so by Ito; that Nohr received money from Ito for that trip, also; that on October 16, 1931, Nohr and Humphrey went down to Punta Banda and picked up six Japanese aliens and on the way back to San Pedro were stopped by the Coast Guard and arrested; that a few days before making the last trip Nohr talked with Ito, who told him to go to Newport with the boat because a lot of people were watching that boat on account of a report Paulsen had made to the immigration officers; that Nohr went to Newport and phoned to Ito Wednesday night and was told by Mrs. Ito to "go tomorrow night"; and that Nohr kept in more or less close touch with Ito by telephone and visits to Ito's house to talk over and get instructions regarding these smuggling activities.
This evidence, together with corroborating evidence to be found in the record, is sufficient to support the verdict of the jury on the conspiracy charges.
Several of appellant's assignments of error are directed to the instructions of the trial court. There is no error in the matters covered by the assignments to which objection was made at the trial and exception noted.
Appellant also contends that bringing in or landing aliens and concealing or harboring them after they have been landed are both parts of one transaction and therefore there was only one conspiracy rather than two separate conspiracies as alleged in the indictment, and that appellant has suffered double punishment. The statute denounces the act of bringing in or landing the aliens and also separately denounces the act of harboring or concealing the aliens after their landing. Consequently, there were two separate offenses and the conspiracy to do one would be a separate conspiracy from the conspiracy to do the other, and conviction on both conspiracy charges was proper. This is true, even though the same overt acts are alleged to have been done in the execution of both conspiracies. It was competent for the trial court to impose a sentence of imprisonment for two years and a fine of $250 on either one of the conspiracy counts, and, since the sentences imposed on both counts are to run concurrently, appellant has not been prejudiced, even assuming his argument that it was double punishment were well taken.
Appellant seeks to have us consider other objections to the charge which he is urging for the first time on appeal. In the trial court no objection was made to the instructions on the grounds now urged and no exception reserved so these matters are not properly before us for review. Wong Tai v. United States, 273 U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545; Smith v. United States (C. C. A.) 41 F.(2d) 215; Silva v. United States (C. C. A.) 35 F.(2d) 598; Feigin v. United States (C. C. A.) 3 F.(2d) 866; Bradshaw v. United States (C. C. A.) 15 F.(2d) 970. The record in this case does not present a situation within the rule that an error of the trial court will be noticed, even though not objected to, at the trial. Smith v. United States (C. C. A.) 47 F.(2d) 518; Stassi v. United States (C. C. A.) 50 F.(2d) 526.
The judgment in case No. 2054-H is reversed and that in case No. 2061-C is affirmed.