21 F.3d 1116
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph BURKE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Salvador ROMERO, Defendant-Appellant.
 Nos. 93-50300, 93-50318.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 10, 1994.*
Decided March 28, 1994.
 
 1
 Before: PREGERSON, O'SCANNLAIN and FERNANDEZ, Circuit Judges
 
 
 2
 Joseph Burke appeals his jury conviction, and Salvador Romero appeals his sentence under the Sentencing Guidelines. Both were prosecuted for possession with intent to distribute methamphetamine in violation of 21 U.S.C. Sec. 841(a)(1) and use of a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). Burke contends that the evidence was insufficient to sustain his convictions. Romero argues that he should have been sentenced pursuant to 21 U.S.C. Sec. 841(b)(1)(A) rather than 21 U.S.C. Sec. 841(b)(1)(B), and claims the district court erred in refusing to downwardly adjust his offense level under the Sentencing Guidelines so as to reflect his minor or minimal participation. We affirm.
 
 A. Sufficiency of the Evidence--Burke
 1. Possession with Intent to Distribute
 
 3
 Possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. Sec. 841(a), has two elements: knowing possession of a controlled substance, and possession of the controlled substance with intent to deliver it to another person. 21 U.S.C. Sec. 841(a); Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction No. 9.04A (1992). Methamphetamine is a controlled substance. 21 U.S.C. Secs. 802(6), 812(c) (schedule II). A defendant who engages in a joint venture to possess drugs may be found to have jointly possessed the drugs, and the jury may infer that the defendant had both knowledge and control over the contraband possessed by a companion. United States v. Dupuy, 760 F.2d 1492, 1500 (9th Cir.1985).
 
 
 4
 The evidence at trial supported a conclusion that Burke knew of, and had control over, the methamphetamine. He was the one who had negotiated the arrangements for the distribution of the methamphetamine. He repeatedly referred to the amount of methamphetamine he had, set the price for the methamphetamine he was going to provide, and the date, location and time of its delivery. The large quantity and high quality of the methamphetamine indicated that it was possessed for purposes of distribution and not for personal use. Moreover, a rational trier of fact could have concluded that Burke and Romero were jointly involved in the sale of the methamphetamine. In short, a rational trier of fact could have found that Burke possessed the methamphetamine with the intent to distribute it.
 
 2. Entrapment Defense
 
 5
 "A defense of entrapment has two elements: government inducement of the crime and the absence of predisposition on the part of the defendant." United States v. Skarie, 971 F.2d 317, 320 (9th Cir.1992). In order to be entitled to acquittal as a matter of law on the basis of entrapment, a defendant must point to "undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by government agents." Id. (internal quotations omitted). That Burke cannot do.
 
 
 6
 The only substantial evidence of government inducement of the methamphetamine transaction was Burke's own testimony that he became involved in the transaction after being pressured into it by the CI. The jury was not required to accept Burke's exculpatory testimony. United States v. Ramirez-Jiminez, 967 F.2d 1321, 1328 (9th Cir.1992). In addition, there was contrary evidence. For example, Burke had asserted that he had been involved in fifteen other sales of methamphetamine in the month before his arrest; he offered to sell cocaine as well as methamphetamine; and he discussed the fact that he was involved in other deals. See Skarie, 971 F.2d at 320-21. Moreover, the CI testified that Burke initiated the transaction by approaching him with methamphetamine he wanted to sell and Burke himself initiated contact with the DEA agent, Steve Woodland, after the initial introduction by the CI. Burke demonstrated no reluctance in conducting the transaction.
 
 
 7
 3. Use of a Firearm in Relation to Drug Trafficking
 
 
 8
 Title 18, Section 924(c) of the United States Code requires proof of two elements: commission of a drug trafficking crime and use of a firearm in relation to that crime. The term "in relation to" in section 924(c) is "expansive" and, at a minimum, means that "the firearm must have some purpose or effect with respect to the drug trafficking crime...." Smith v. United States, --- U.S. ----, 113 S.Ct. 2050, 2058-59, 124 L.Ed.2d 138 (1993). In Smith, for example, the gun's only use was as barter for narcotics. Id. at ----, 113 S.Ct. at 2052. This Circuit has stated that "the evident purpose of the statute was to impose more severe sanctions where firearms facilitated, or had the potential for facilitating, the commission of a felony." United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985), cert. denied, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1986); see also, United States v. Torres-Medina, 935 F.2d 1047, 1050 (9th Cir.1991). We determine there was sufficient evidence to support Burke's conviction of this offense as well.
 
 
 9
 Burke told Woodland, at the time of the offense, that he carried a firearm "for protection" and, further, offered the gun to Woodland to embolden Woodland to consummate the deal at a nearby residential site of Burke's choosing. A rational trier of fact could infer that Burke used the firearm "for protection" during drug deals. Also, he used the gun when he offered it to Woodland in an attempt to embolden Woodland to complete the transaction.
 
 B. Sentencing--Romero
 
 10
 Romero contends that since the indictment charged him with possessing with intent to distribute "approximately 888.5 grams of a mixture or substance containing a detectable amount of methamphetamine," he should have been and only properly could have been sentenced in accordance with 21 U.S.C. Sec. 841(b)(1)(B)(viii) rather than 21 U.S.C. Sec. 841(b)(1)(A)(viii). We do not agree.
 
 
 11
 Quantity is not an element of section 841(a), the underlying substantive offense provision. Rather it is only relevant at sentencing under section 841(b). United States v. Sotelo-Rivera, 931 F.2d 1317, 1319 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1186, 117 L.Ed.2d 428 (1992); see also, United States v. Egbuniwe, 969 F.2d 757, 763 (9th Cir.1992); United States v. Walker, 915 F.2d 480, 486 (9th Cir.1990); United States v. Klein, 860 F.2d 1489, 1494-95 (9th Cir.1988); United States v. Normandeau, 800 F.2d 953, 956 (9th Cir.1986). Therefore, quantity need not be pled in the indictment and due process is satisfied "if a defendant received sufficient notice and had an opportunity to dispute enhancement based on quantity at the time of sentencing". United States v. Arias-Villanueva, 998 F.2d 1491, 1510 (9th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 359, 126 L.Ed.2d 322 (1993).
 
 
 12
 Romero received sufficient notice of the potential penalty. Three months prior to entering his guilty plea, Romero was provided with a report of the chemical analysis of the drugs possessed by him, which indicated that the 888.5 grams were approximately 98% pure. At the change of plea hearing, the government stated that a portion of the factual basis for the plea was that Romero possessed "888.5 grams of methamphetamine at approximately 98% purity." Prior to Romero's entry of a guilty plea, the court informed him that the government sought to apply the ten year mandatory minimum provision. The Probation Department calculated the quantity of the pure methamphetamine Romero possessed as being 870.7 grams, and recommended a sentence based on this pure amount. The government's position papers concerning the sentencing factors also notified Romero that the government was seeking to apply the enhanced penalty provision. We have previously determined that similar notice--filing of an Information to Enhance Sentence by the government and mention of the enhancement in the presentence report and sentencing briefs--was sufficient to comply with due process. Arias-Villanueva, 998 F.2d at 1510; see also, United States v. Alvarez, 972 F.2d 1000, 1006 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1427, 122 L.Ed.2d 795 (1993).[1]
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel find this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because we determine that Romero was subject to and received the mandatory minimum sentence of ten years, we need not decide the issue of the propriety of the district court's refusal to treat him as a minor or minimal participant under the Guidelines. Were we to do so, we see no clear error in that determination. United States v. Tamez, 941 F.2d 770, 776 (9th Cir.1991)